# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

|  |  |
|---|---|
| IN RE AUTOMOTIVE PARTS ANTITRUST LITIGATION | Master File No. 2:12-md-02311<br>Judge Marianne O. Battani<br>Magistrate Judge Mona K. Majzoub |
| IN RE POWER WINDOW SWITCHES | Case No. 2:16-cv-03903 |
| THIS DOCUMENT RELATES TO END-PAYOR ACTIONS | |

## MOTION FOR PRELIMINARY APPROVAL OF PROPOSED SETTLEMENT WITH DEFENDANT OAE AND PROVISIONAL CERTIFICATION OF SETTLEMENT CLASS

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that as soon as this motion may be heard before Hon. Marianne O. Battani, End-Payor Plaintiffs ("EPPs") will and do hereby respectfully move the Court for an order preliminarily approving a proposed settlement between the End-Payor Plaintiffs and Defendant Omron Automotive Electronics Co. Ltd. ("OAE") in the amount of US$3,040,000.00, and provisional certification of the proposed Settlement Class in the above-entitled action.

This motion is based on this Notice of Motion and Motion, the Memorandum of Points and Authorities in support thereof, all filings in this litigation, and such other argument as may be presented to the Court.

Date: August 12, 2016                           Respectfully submitted,

                                                */s/ Steven N. Williams*
                                                Steven N. Williams
                                                Demetrius Lambrinos
                                                Elizabeth Tran
                                                Joyce Chang
                                                **COTCHETT, PITRE & McCARTHY, LLP**
                                                San Francisco Airport Office Center
                                                840 Malcolm Road, Suite 200
                                                Burlingame, CA 94010
                                                Telephone: (650) 697-6000
                                                Facsimile: (650) 697-0577
                                                swilliams@cpmlegal.com
                                                dlambrinos@cpmlegal.com
                                                etran@cpmlegal.com
                                                jchang@cpmlegal.com

                                                */s/ Hollis Salzman*
                                                Hollis Salzman
                                                Bernard Persky
                                                William V. Reiss
                                                **ROBINS KAPLAN LLP**
                                                601 Lexington Avenue, Suite 3400
                                                New York, NY 10022
                                                Telephone: (212) 980-7400
                                                Facsimile: (212) 980-7499
                                                HSalzman@RobinsKaplan.com
                                                BPersky@RobinsKaplan.com
                                                WReiss@RobinsKaplan.com

                                                */s/ Marc M. Seltzer*
                                                Marc M. Seltzer
                                                Steven G. Sklaver
                                                **SUSMAN GODFREY L.L.P.**
                                                1901 Avenue of the Stars, Suite 950
                                                Los Angeles, CA 90067-6029
                                                Telephone: (310) 789-3100

Facsimile: (310) 789-3150
mseltzer@susmangodfrey.com
ssklaver@susmangodfrey.com

Terrell W. Oxford
Omar Ochoa
**SUSMAN GODFREY L.L.P.**
901 Main Street, Suite 5100
Dallas, TX 75202
Telephone: (214) 754-1900
Facsimile: (214)754-1933
toxford@susmangodfrey.com
oochoa@susmangodfrey.com

*Interim Co-Lead Class Counsel for the Proposed
End-Payor Plaintiff Class*

E. Powell Miller
Devon P. Allard
**THE MILLER LAW FIRM, P.C**.
The Miller Law Firm, P.C.
950 W. University Drive, Suite 300
Rochester, MI 48307
Telephone: (248) 841-2200
Facsimile: (248) 841-2200
epm@millerlawpc.com
dpa@millerlawpc.com

*Interim Liaison Class Counsel for the Proposed
End-Payor Plaintiff Class*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | |
|---|---|
| IN RE AUTOMOTIVE PARTS ANTITRUST LITIGATION | Master File No. 2:12-md-02311 |
| | Judge Marianne O. Battani |
| | Magistrate Judge Mona K. Majzoub |
| IN RE POWER WINDOW SWITCHES | Case No. 2:16-cv-03903 |
| THIS DOCUMENT RELATES TO END-PAYOR ACTIONS | |

**MEMORANDUM OF LAW IN SUPPORT OF END-PAYOR PLAINTIFFS'**
**MOTION FOR PRELIMINARY APPROVAL OF PROPOSED SETTLEMENT**
**WITH DEFENDANT OAE AND**
**PROVISIONAL CERTIFICATION OF SETTLEMENT CLASS**

**<u>STATEMENT OF ISSUES PRESENTED</u>**

1. Whether End-Payor Plaintiffs' ("EPPs") settlement with Defendant Omron Automotive Electronics Co. Ltd. ("OAE") embodied in the Settlement Agreement entered into on August 10, 2016 ("Settlement Agreement") and attached hereto as Exhibit 1, is fair, reasonable, and adequate, and should be preliminarily approved;

2. Whether the Court should provisionally certify the Settlement Class under Federal Rule of Civil Procedure ("Rule") 23(a) and (b)(3);

3. Whether the Court should stay the proceedings by the EPPs against OAE in accordance with the terms of the Settlement Agreement; and

4. Whether the Court should appoint Interim Co-Lead Class Counsel for the EPPs as Settlement Class Counsel for this settlement. [1]

---

[1] Unless otherwise defined, capitalized terms shall have the meaning ascribed to them in the Settlement Agreement.

## <u>CONTROLLING OR MOST APPROPRIATE AUTHORITIES</u>

Fed. R. Civ. P. 23

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997)

*Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 133 S. Ct. 1184 (2013)

*Cason-Merenda v. VHS of Mich., Inc.*, 2013 U.S. Dist. LEXIS 131006 (E.D. Mich. Sept. 13, 2013)

*Griffin v. Flagstar Bancorp, Inc.*, 2013 U.S. Dist. LEXIS 173702 (E.D. Mich. Dec. 12, 2013)

*In re Am. Med. Sys., Inc.*, 75 F.3d 1069 (6th Cir. 1996)

*In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508 (E.D. Mich. 2003)

*In re Corrugated Container Antitrust Litig.,* 1981 WL 2093 (S.D. Tex. Jan. 27, 1981)

*In re Foundry Resins Antitrust Litig.*, 242 F.R.D. 393 (S.D. Ohio 2007)

*In re Linerboard Antitrust Litig.*, 292 F. Supp. 2d 631 (E.D. Pa. 2003)

*In re Packaged Ice Antitrust Litig.*, 2011 U.S. Dist. LEXIS 17255 (E.D. Mich. Feb. 22, 2011)

*In re Scrap Metal Antitrust Litig.*, 527 F.3d 517 (6th Cir. 2008)

*In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 722 F.3d 838 (6th Cir. 2013)

*IUE-CWA v. Gen. Motors Corp.*, 238 F.R.D. 583 (E.D. Mich. 2006)

*Sheick v. Auto Component Carrier LCC*, 2010 U.S. Dist. LEXIS 110411 (E.D. Mich. Oct. 18, 2010)

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ........................................................................ 1

THE BASIC TERMS AND BACKGROUND OF THE SETTLEMENT AGREEMENT .......... 4

ARGUMENT ......................................................................................... 7

I.  Preliminary Approval Should be Granted Because the Proposed Settlement Falls Well Within the Range of Possible Approval. ............................................... 7

    A.  The Settlement Agreement Achieves an Excellent Result for the Proposed Settlement Class, Particularly Given the Expense, Duration, and Uncertainty of Continued Litigation. ...................................................................... 10

    B.  The Settlement Agreement Is The Result Of Thorough Arm's-Length Negotiations Conducted By Highly Experienced Counsel. .................................. 14

II.  The Proposed Settlement Class Should Be Provisionally Certified Pursuant to Rule 23. .......................................................................................... 15

    A.  The Proposed Settlement Class Meets the Requirements of Rule 23(a). ............. 17

        i.  The Proposed Settlement Class Is So Numerous That It Is Impracticable to Bring All Class Members Before the Court. ............................................ 17

        ii.  End-Payor Plaintiff Class Representatives and the Proposed Settlement Class Share Common Legal and Factual Questions. ................................... 18

        iii.  End-Payor Plaintiff Class Representatives' Claims Are Typical of the Claims of the Members of the Proposed Settlement Class. ......................... 19

        iv.  Proposed Settlement Class Counsel and End-Payor Plaintiff Class Representatives Will Fairly and Adequately Protect the Interests of the Proposed Settlement Class. ............................................................... 21

    B.  The Proposed Settlement Class Meets the Requirements of Rule 23(b)(3). .......... 22

        i.  Common Questions of Law and Fact Predominate. ................................... 22

        ii.  A Class Action Is The Superior Method To Adjudicate These Claims. ...... 24

    C.  The Proposed Settlement Class Meets the Requirements of Rule 23(b)(2). .......... 26

III.  Notice to the Class Members. ............................................................... 26

CONCLUSION ...................................................................................... 27

**<u>TABLE OF AUTHORITIES</u>**

**Page(s)**

**Cases**

*Agretti v. ANR Freight Sys., Inc.*,
  982 F.2d 242 (7th Cir. 1992).............................................................................. 8

*Amchem Prods., Inc. v. Windsor*,
  521 U.S. 591 (1997) ............................................................................. 22, 23, 26

*Amgen Inc. v. Conn. Retirement Plans & Trust Funds*,
  133 S.Ct. 1184 (2013) ............................................................................... 16, 23

*Bacon v. Honda of America Mfg., Inc.*,
  370 F.3d 565 (6th Cir. 2004).............................................................................. 18

*Blades v. Monsanto Co.*,
  400 F.3d 562 (8th Cir. 2005).............................................................................. 24

*Bobbitt v. Acad. of Reporting*,
  2009 WL 2168833 (E.D. Mich. Jul. 21, 2009)...................................................... 8

*Bowers v. Windstream Ky. East, LLC*,
  Civil Action No. 3:09-CV-440-H, 2013 U.S. Dist. LEXIS 157242
  (W.D. Ky. Nov. 1, 2013)...................................................................................... 15

*Cason-Merenda v. VHS of Mich., Inc.*,
  Case No. 06-15601, 2013 U.S. Dist. LEXIS 131006
  (E.D. Mich. Sept. 13, 2013) ............................................................ 16, 18, 20, 23

*Clark Equip. Co. v Int'l Union of Allied Industrial Workers of Am.*,
  803 F.2d 878 (6th Cir. 1986).............................................................................. 8

*Cordes & Co. Financial Services, Inc. v. A.G. Edwards & Sons, Inc.*,
  502 F.3d 91 (2d Cir. 2007)................................................................................. 24

*Date v. Sony Elecs., Inc.*,
  Case No. 07-15474, 2013 U.S. Dist. LEXIS 108095
  (E.D. Mich. July 31, 2013).................................................................................. 18

*Dillworth v. Case Farms Processing, Inc.*,
  No. 5:08-cv-1694, 2010 U.S. Dist. LEXIS 20446
  (N.D. Ohio Mar. 8, 2010).................................................................................... 25

*Fidel v. Farley*,
534 F.3d 508 (6th Cir. 2008) .................................................................. 26

*Gautreaux v. Pierce*,
690 F.2d 616 (7th Cir. 1982) .................................................................... 9

*Golden v. City of Columbus*,
404 F.3d 950 (6th Cir. 2005) .................................................................. 17

*Griffin v. Flagstar Bancorp, Inc.*,
Case No. 2:10-cv-10610, 2013 U.S. Dist. LEXIS 173702
(E.D. Mich. Dec. 12, 2013) ................................................... 7, 15, 18, 20

*Hyland v. Homeservices of Am., Inc.*,
Case No. 3:05-CV-612-R, 2008 U.S. Dist. LEXIS 90892
(W.D. Ky. Nov. 6, 2008) ........................................................................ 17

*In re Aluminum Phosphide Antitrust Litig.*,
160 F.R.D. 609 (D. Kan. 1995) .............................................................. 18

*In re Am. Med. Sys., Inc.*,
75 F.3d 1069 (6th Cir. 1996) ............................................................ 18, 20

*In re Ampicillin Antitrust Litig.*,
82 F.R.D. 652 (D.D.C. 1979) ................................................................. 14

*In re Blood Reagents Antitrust Litig.*,
283 F.R.D. 222 (E.D. Pa. 2012) ............................................................ 24

*In re Cardizem CD Antitrust Litig.*,
218 F.R.D. 508 (E.D. Mich. 2003) ................................................. passim

*In re Chambers Dev. Sec. Litig.*,
912 F. Supp. 822 (W.D. Pa. 1995) ......................................................... 11

*In re Corrugated Container Antitrust Litig.*,
1981 WL 2093 (S.D. Tex. Jan. 27, 1981) .................................. 12, 13, 14

*In re Corrugated Container Antitrust Litig.*,
643 F.2d 195, 208 (5th Cir. 1981) .......................................................... 21

*In re Delphi Corp. Sec. Derivatives & ERISA Litig.*,
248 F.R.D. 483 (E.D. Mich. 2008) ......................................................... 16

*In re Dun & Bradstreet Credit Servs. Customer Litig.*,
130 F.R.D. 366 (S.D. Ohio 1990) .......................................................... 14

*In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*,
 No. M 02-1486 PJH, 2006 U.S. Dist. LEXIS 39841
 (N.D. Cal. June 5, 2006) ........................................................................... 19

*In re Farmers Ins. Exchange, Claims Representatives' Overtime Pay Litig.*,
 481 F.3d 1119 (9th Cir. 2007) ................................................................... 11

*In re Foundry Resins Antitrust Litig.*,
 242 F.R.D. 393 (S.D. Ohio 2007) ....................................................... passim

*In re Linerboard Antitrust Litig.*,
 292 F. Supp. 2d 631 (E.D. Pa. 2003) .................................................. 12, 13

*In re Linerboard Antitrust Litig.*,
 321 F. Supp. 2d 619 (E.D. Pa. 2004) ......................................................... 13

*In re Packaged Ice Antitrust Litig.*,
 Case No. 08-MD-01952, 2011 U.S. Dist. LEXIS 17255
 (E.D. Mich. Feb. 22, 2011) ................................................................. passim

*In re Packaged Ice Antitrust Litig.,*
 No. 08-MD-01952, 2010 WL 3070161 (E.D. Mich. Aug. 2, 2010) ........... 9

*In re Potash Antitrust Litig.*,
 159 F.R.D. 682 (D. Minn. 1995) ................................................................ 23

*In re Pressure Sensitive Labelstock Antitrust Litig.*,
 584 F. Supp. 2d 697 (M.D. Pa. 2008) ........................................................ 13

*In re Rent-Way Sec. Litig.*,
 305 F.Supp.2d 491 (W.D. Pa. 2003) .......................................................... 12

*In re Scrap Metal Antitrust Litig.*,
 527 F.3d 517 (6th Cir. 2008) ........................................................ 22, 23, 24

*In re Southeastern Milk Antitrust Litig.*,
 Master File No. 2:09-MD-1000, 2010 U.S. Dist. LEXIS 94223
 (E.D. Tenn. Sept. 7, 2010) ......................................................................... 17

*In re Sulzer Hip Prosthesis & Knee Prosthesis Liab. Litig.*,
 Case No. 1:01-CV-9000, 2001 U.S. Dist. LEXIS 26714
 (E.D. Ohio Oct. 19, 2001) ............................................................................ 9

*In re Universal Serv. Fund Tel. Billing Practices Litig.*,
 219 F.R.D. 661 (D. Kan. 2004) ................................................................. 25

*In re Uranium Antitrust Litig.*,
  617 F.2d 1248 (7th Cir. 1980) ................................................................. 14

*In re Urethane Antitrust Litig.*,
  251 F.R.D. 629 (D. Kan. 2008) ................................................................ 24

*In re Visa Check/MasterMoney Antitrust Litig.*,
  280 F.3d 124 (2d Cir. 2001) .................................................................... 24

*In re Vitamins Antitrust Litig.*,
  209 F.R.D. 251 (D.D.C. 2002) ................................................................. 23

*In re Warfarin Sodium Antitrust Litig.*,
  391 F.3d 516 (3d Cir. 2004) .................................................................... 12

*In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*,
  722 F.3d 838 (6th Cir. 2013) ........................................................... passim

*Int'l Union, UAW v. Ford Motor Co.*,
  Case Nos. 05-74730, 06-10331, 2006 U.S. Dist. LEXIS 70471
  (E.D. Mich. July 13, 2006) .................................................................. 8, 20

*IUE-CWA v. Gen. Motors Corp.*,
  238 F.R.D. 583 (E.D. Mich. 2006) ...................................................... 7, 14

*Karkoukli's, Inc. v. Dohany*,
  409 F.3d 279 (6th Cir. 2005) .................................................................. 26

*Leonhardt v. ArvinMeritor, Inc.*,
  581 F. Supp. 2d 818 (E.D. Mich. 2008) ................................................. 15

*Marcus v. Dep't of Revenue*,
  206 F.R.D. 509 (D. Kan. 2002) ............................................................... 22

*Miller v. Univ. of Cincinnati*,
  241 F.R.D. 285 (S.D. Ohio 2006) ........................................................... 17

*Powers v. Hamilton Cnty. Public Defender Comm.*,
  501 F.3d 595 (6th Cir. 2007) .................................................................. 23

*Rankin v. Rots*,
  No. 02-cv-71045, 2006 U.S. Dist. LEXIS 45706
  (E.D. Mich. June 28, 2006) ...................................................................... 9

*Reed v. Advocate Health Care*,
  268 F.R.D. 573 (N.D. Ill. 2009) .............................................................. 24

*Robbins v. Koger Props., Inc.*,
   116 F.3d 1441 (11th Cir. 1997) ................................................................. 11

*Senter v. Gen. Motors Corp.*,
   532 F.2d 511 (6th Cir. 1976) ................................................................... 21

*Sheick v. Auto Component Carrier LCC*,
   Case No. 2:09-cv-14429, 2010 U.S. Dist. LEXIS 110411
   (E.D. Mich. Oct. 18, 2010) ..................................................................... 14

*Stout v. J.D. Byrider*,
   228 F.3d 709 (6th Cir. 2000) ................................................................... 20

*Thacker v. Chesapeake Appalachia, L.L.C.*,
   259 F.R.D. 262 (E.D. Ky. 2009) ......................................................... 14, 26

*UAW v. Gen. Motors. Corp.*,
   497 F.3d 615 (6th Cir. 2007) ..................................................................... 7

*Wal-Mart Stores, Inc. v. Dukes*,
   131 S.Ct. 2541 (2011) ............................................................................. 16

**Other Authorities**

CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE
   § 1522, at 225-26 (2d ed. 1990) ................................................................ 8

HERBERT B. NEWBERG & ALBA CONTE, NEWBERG ON CLASS ACTIONS (4th ed. 2005)

   § 3:10 ..................................................................................................... 19

   § 11.41 ..................................................................................................... 9

NEWBERG ON CLASS ACTIONS (3d ed. 1992)

   § 18.28 ................................................................................................... 23

MANUAL FOR COMPLEX LITIGATION (FOURTH) (2004)

   § 13.12 ..................................................................................................... 8

   § 21.32 ................................................................................................... 15

   § 21.63 ..................................................................................................... 8

MANUAL FOR COMPLEX LITIGATION (FOURTH) (2016)

§ 21.662 ............................................................................................................ 9, 15

MANUAL FOR COMPLEX LITIGATION (SECOND) (1986)

§ 30.46 ................................................................................................................... 8

**Rules**

Federal Rules of Civil Procedure

Rule 23 ............................................................................................................ 16, 17

Rule 23(a) ................................................................................................... passim

Rule 23(a)(1) .......................................................................................................... 17

Rule 23(a)(2) .................................................................................................. 18, 19

Rule 23(a)(3) .................................................................................................. 19, 20

Rule 23(a)(4) .......................................................................................................... 21

Rule 23(b) ............................................................................................................... 16

Rule 23(b)(2) .......................................................................................................... 26

Rule 23(b)(3) ........................................................................................... 22, 25, 26

Rule 23(c)(2)(B) ..................................................................................................... 26

Rule 23(e)(1) .......................................................................................................... 26

Rule 23(g) .............................................................................................................. 21

The End-Payor Plaintiffs ("EPPs"), on behalf of themselves and all others similarly situated, by and through the undersigned Interim Co-Lead Class Counsel, respectfully submit this memorandum in support of their motion seeking preliminary approval of a settlement with Defendant OAE as defined below, and provisional certification of the proposed Settlement Class in the above-entitled action.

## PRELIMINARY STATEMENT

EPPs and Defendant OAE have reached an agreement ("Settlement Agreement") to settle all EPP claims asserted against OAE in the Power Window Switches case pending before this Court in *In re Automotive Parts Antitrust Litigation* ("Auto Parts"), MDL No. 2311. The Settlement Agreement will result in a payment of US$3,040,000.00 to the EPP class, should it be finally approved.

For the purpose of the proposed settlement, the following terms are defined as follows:

"**Automotive Parts**" means any part or part assembly designed for installation in any four-wheeled passenger automobile, van, sports utility vehicle, crossover, or pick-up truck as defined in Paragraph 12 of the Proposed Consolidated Amended Complaint, Case No. 2:13-cv-703 (Dec. 18, 2015), ECF No. 57-1, and includes Automotive Wire Harness Systems.

"**Power Window Switches**" has the meaning of that phrase as used in Paragraph 2 of the Class Action Complaint, Case No. 2:16-cv-12772 (July 27, 2016), ECF No. 1.

The Power Window Switches Defendants include: Toyo Denso Co. Ltd. and Weastec, Inc. (together, "Toyo Denso"); Omron Automotive Electronics Co., Ltd. ("OAE"); and other agents and unnamed co-conspirators.

*In re Automotive Parts Antitrust Litigation* ("Auto Parts"), MDL No. 2311, arises from various conspiracies by and among the automotive industry's largest manufacturers, marketers,

and sellers of automotive parts to fix prices, rig bids, and allocate the market and customers in the United States for the sale of such products. Defendant OAE agreed to plead guilty and pay a US$4.5 million criminal fine for engaging in a conspiracy to rig bids for and to fix, stabilize and maintain the prices of Power Window Switches and related products sold to Honda Motor Company, Ltd. and its subsidiaries in the United States and elsewhere., for installation in the 2006 and 2011 model year Honda Civics in violation of the Sherman Act, 15 U.S.C. § 1.

EPPs' various complaints involving Auto Parts were each centralized for coordinated pretrial purposes. EPPs filed the first class action complaint ("Complaint") involving Power Window Switches against the foregoing Defendants on July 27, 2016. The Court appointed the undersigned firms as Interim Co-Lead Class Counsel and Interim Liaison Counsel for the End-Payor Actions in the Master Docket for MDL No. 2311. *See id., citing* Master File No. 2:12-md-2311, Case No. 2:12-cv-00100 (Aug. 7, 2012, ECF No. 271). From the inception of these cases, Interim Co-Lead Class Counsel have represented the interests of the classes of EPPs, including overseeing and directing the prosecution and settlement of the claims brought against Defendant OAE. This proposed settlement is a result of those efforts.

EPPs allege that OAE unlawfully fixed prices, rigged bids for, and allocated the supply of Power Window Switches and then sold those products at supracompetitive prices to Honda Motor Co., Ltd. in the United States and elsewhere for installation in Honda Civics.

The settlement between the EPPs and Defendant OAE is meaningful and substantial and will result in a payment of US$3,040,000.00 for the benefit of the EPP Class, a very significant achievement in this litigation. Standing alone, the monetary recovery from Defendant OAE is remarkable, but the settlement is also valuable to the EPPs in that it requires Defendant OAE to provide comprehensive cooperation in the form of, *inter alia*, attorney proffers, interviews with

and depositions of witnesses, and the production of certain documents (including transactional data), related to the claims asserted in these cases. This settlement is also particularly noteworthy because Defendant OAE is the first settler in the *Power Window Switches* case. In addition, OAE has agreed to refrain from conduct that constitutes a *per se* violation of Section 1 of the Sherman Act (whether characterized as price-fixing, market allocation, bid-rigging, or otherwise) for a period of 24 months from the date of the entry of final judgment. *See* Settlement Agreement Section F. Defendant OAE's cooperation agreement will greatly enhance the EPPs' ability to prosecute their claims against the remaining non-settling Defendants. The ability to obtain such assistance without protracted and expensive discovery is extremely valuable to the EPPs.

Furthermore, Defendant OAE's sales will remain in the case for purposes of computing the treble damages claim against the non-settling Defendants in accordance with governing law and shall be part of any joint and several liability claims against other current or future defendants. *See* Settlement Agreement ¶ 62. The EPPs and the members of the proposed Settlement Class will retain their ability to recover from the remaining Defendants damages caused by the alleged conspiracies.

EPPs and their Interim Co-Lead Class Counsel believe, for all the reasons set forth, that the settlement with Defendant OAE is in the best interest of the proposed Settlement Class and merits the Court's preliminary approval. EPPs therefore request the entry of an Order:

1.    Preliminarily approving the settlement;

2.    Provisionally certifying the proposed Settlement Class;

3.    Staying the proceedings against Defendant OAE in accordance with the terms of the Settlement Agreement; and

4.    Appointing Interim Co-Lead Class counsel for EPPs as Settlement Class Counsel for this settlement.

**THE BASIC TERMS AND BACKGROUND OF THE SETTLEMENT AGREEMENT**

The Settlement Agreement with Defendant OAE arises from extensive arm's length and good faith negotiations. The EPPs' counsel participated in intensive fact-gathering sessions and informational meetings, as well as extensive negotiations that took place over several months through telephone calls, an in-person meeting, and other communications.

**Settlement Class**: EPPs and the class they represent are consumers and businesses who indirectly purchased or leased a new Honda Vehicle in the United States not for resale containing Power Window Switches made by Defendant OAE or a co-defendant (i) as a component or (ii) purchased Automotive Parts, including Power Window Switches, made by Defendant OAE or a co-defendant in the United States as replacement parts.

The Settlement Agreement defines the Settlement Class in the Power Window Switches action as follows:

(a)     "Settlement Class" is defined as:

All persons and entities who, from January 1, 2003, through the Execution Date, purchased or leased a new Honda Vehicle in the United States not for resale that included one or more Power Window Switches as a component part, or indirectly purchased one or more Power Window Switches as a replacement part, which were manufactured or sold by a Defendant, any current or former subsidiary of a Defendant, or any co-conspirator of a Defendant.  Excluded from the Power Window Switches Settlement Class are Defendants, their parent companies, subsidiaries and affiliates, any co-conspirators, federal governmental entities and instrumentalities of the federal government, states and their subdivisions, agencies and instrumentalities, and persons who purchased Power Window Switches directly or for resale.

Settlement Agreement, ¶ 13.

"Vehicle," as used in these class definitions, is limited to four-wheeled passenger automobiles, vans, sports utility vehicles, and crossovers or pick-up trucks.

**Settlement Amount**: Defendant OAE has agreed to pay US$3,040,000.00 by wiring such funds to an escrow account ("Escrow Account") established at Wells Fargo & Company. *Id.* ¶ 25. Wells Fargo & Company will serve as the escrow agent ("Escrow Agent") and shall cause the Settlement Amount deposited in the Escrow Account, as well as the resulting Settlement Fund, to be invested in short-term instruments backed by the full faith and credit of the United States Government or fully insured in writing by the United States Government, or money market funds rated Aaa and AAA, respectively by Moody's Investor Services and Standard and Poor's, invested substantially in such instruments, and shall reinvest any income from those instruments and the proceeds of those instruments as they mature in similar instruments at their then current market rates. *Id.* ¶ 26.

**Cooperation**: In addition to paying the Settlement Amount, Defendant OAE has agreed to provide extensive cooperation to the EPPs that will significantly aid in their prosecution of claims against the remaining Defendants. A general summary of Defendant OAE's cooperation obligations is provided below. The terms of this cooperation agreement are set forth in fuller detail in Section K (¶¶ 45 - 54) of the Settlement Agreement. Defendant OAE's obligation to cooperate includes, among many other things, the duty to provide:

46.    Identity of Individuals. OAE will provide Settlement Class Counsel with the identity of all current and former employees, directors and officers of OAE who: (1) were interviewed by the DOJ, JFTC, or EU in connection with to be alleged anticompetitive activity; or (2) appeared before the grand jury in the DOJ investigation of the Power Window Switches conspiracy. *See* Settlement Agreement ¶ 46.

47.    Documents. OAE will use its best efforts to substantially complete the production of the following Documents within 120 days after preliminary approval by the Court of this Agreement: (1) documents in the files of their agreed upon or to be agreed upon custodians and in central files responsive to interrogatories and requests for production of documents served on it before the Execution Date of this Agreement; (2) documents concerning its determination of prices for Power Window Switches in the United States or for use in Vehicles to be sold in the United

5

States; (3) documents showing how employees were trained or instructed to bid and set prices in the United States or for use in Vehicles to be sold in the United States; and (4) documents relating to issued requests for quotation ("RFQ"), bids submitted in response to RFQs, RFQ award notifications, and post-award price adjustments in the United States or for use in Vehicles to be sold in the United States. All currently pending discovery requests will be withdrawn, and no further discovery will be sought from any OAE entity other than as provided for in the settlement agreement. *See* Settlement Agreement ¶ 47.

48.    Transactional Data. At the request of End-Payor Plaintiffs and subject to meet and confer with OAE as to any reasonable limitations on this obligation, OAE will produce within one hundred eighty (180) days, transactional data related to Power Window Switches, to the extent it exists in OAE's electronic databases as of two years after the Execution Date of this Agreement, concerning OAE's bids for and sales of Power Window Switches to Original Equipment Manufacturers or other purchasers of Power Window Switches from January 1, 2003 to two years from the Execution Date of this Agreement. The precise end date for this production obligation will be agreed upon by the Parties in subsequent meet and confer discussions, taking into account the burden of producing the transactional data and the End-Payor Plaintiffs' need for that data. OAE will provide any translations of the above data that may exist as of the Execution Date of this Agreement. *See* Settlement Agreement ¶ 48.

49.    Attorney Proffers and Witness Interviews.

(a)    OAE's counsel will make themselves available at a mutually agreed location in the United States for up to two meetings of one business day each to provide an attorney's proffer of facts known to them. OAE further agrees to make five (5) persons available for interviews and depositions, provide five (5) declarations or affidavits from the same persons, and make those persons available to testify at trial. Each deposition shall be conducted at a mutually agreed-upon location, and shall be limited to a total of seven (7) hours over one (1) day unless the deposition is in a language other than English, in which case the deposition shall be limited to a total of thirteen (13) hours over two (2) days.

(b)    In addition to its Cooperation obligations set forth herein, OAE at the request of End-Payor Plaintiffs and subject to meet and confer with OAE, OAE agrees to produce through affidavit(s) or declaration(s) and/or at trial, in settlement class counsel's discretion, representatives qualified to authenticate, establish as business records, or otherwise establish any other necessary foundation for admission into evidence of any documents or transactional data produced or to be produced by OAE and/or Releasees. Settlement Class counsel agree to use their best efforts to obtain stipulations that would avoid the need to call OAE witnesses at trial for the purpose of obtaining such evidentiary foundations.

(c)    In addition, after conducting a reasonable search, OAE shall, to the best of its knowledge, identify those Vehicles sold in the United States that contain Power Window Switches sold by OAE. *See* Settlement Agreement ¶ 49.

**Released Claims**: The Settlement Agreement releases only Defendant OAE (and its respective past and present, direct and indirect, parents, subsidiaries, associates, partnerships, and affiliates, including, but not limited to, the predecessors, successors, and assigns of each of the above; and each and all of the present and former principals, partners, officers, directors, supervisors, employees, agents, stockholders, members, representatives, insurers, attorneys, servants, heirs, executors, administrators, and assigns of each of the foregoing) from all Settlement Class Member claims arising out of or relating in any way to any conduct alleged in the Complaint, the Proposed Consolidated Amended Complaint, or any act or omission of Defendant OAE, concerning the parts subject to the action. *See* Settlement Agreement ¶ 9.

## ARGUMENT

The Settlement Agreement is not only fair, reasonable, and adequate—resulting from extensive arm's length negotiations by experienced counsel—but also a thoughtfully conceived resolution of the proposed Settlement Class' claims that maximizes their recovery and guarantees early, significant cooperation by Defendant OAE in the continued prosecution of EPPs' claims.

## I.    **Preliminary Approval Should be Granted Because the Proposed Settlement Falls Well Within the Range of Possible Approval.**

It is well-established in the Sixth Circuit that there is an overriding public interest in settling and quieting litigation, particularly class actions. *See Griffin v. Flagstar Bancorp, Inc.*, Case No. 2:10-cv-10610, 2013 U.S. Dist. LEXIS 173702, at *6 (E.D. Mich. Dec. 12, 2013) (*citing UAW v. Gen. Motors. Corp.*, 497 F.3d 615, 631 (6th Cir. 2007) (noting "the federal policy favoring settlement of class actions")); *see also IUE-CWA v. Gen. Motors Corp.*, 238 F.R.D. 583, 593 (E.D. Mich. 2006). "This policy applies with equal force whether the settlement is partial, involving only

7

some of the defendants, or complete." *In re Packaged Ice Antitrust Litig.*, Case No. 08-MD-01952, 2011 U.S. Dist. LEXIS 17255, at \*44 (E.D. Mich. Feb. 22, 2011) ("*Packaged Ice*"); *see also Agretti v. ANR Freight Sys., Inc.*, 982 F.2d 242, 247 (7th Cir. 1992) ("In complex litigation with a plaintiff class, 'partial settlements often play a vital role in resolving class actions'" (*quoting* MANUAL FOR COMPLEX LITIGATION (SECOND) § 30.46 (1986)). In fact, "settlement should be facilitated at as early a stage of the litigation as possible." 6A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1522, at 225-26 (2d ed. 1990) (*citing* 1983 Advisory Committee Notes); *see also* MANUAL FOR COMPLEX LITIGATION (FOURTH) § 13.12 (2004) ("*Manual*") ("[S]ettlement should be explored early in the case.").

Approval of a proposed class action settlement proceeds in two steps. First, the court grants preliminary approval to the settlement and provisionally certifies a settlement class. Second, after notice of the settlement is provided to the class and the court conducts a fairness hearing, the court may grant final approval to the settlement. *See Manual* § 21.63; *see also Bobbitt v. Acad. of Reporting,* 2009 WL 2168833, at \*1 (E.D. Mich. Jul. 21, 2009) (citing authorities).

A proposed settlement agreement should be preliminarily approved if "the preliminary evaluation of the proposed settlement does not disclose grounds to doubt its fairness or other obvious deficiencies . . . and [the settlement] appears to fall within the range of possible approval." *See Int'l Union, UAW v. Ford Motor Co.*, Case Nos. 05-74730, 06-10331, 2006 U.S. Dist. LEXIS 70471, at \*11 (E.D. Mich. July 13, 2006). The district court's role in reviewing settlements "must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Clark Equip. Co. v Int'l Union of Allied Industrial Workers of Am.*, 803 F.2d 878, 880 (6th Cir. 1986). Courts adhere

to "an initial presumption of fairness when a proposed class settlement, which was negotiated at arm's length by counsel for the class, is presented for court approval." 4 HERBERT B. NEWBERG & ALBA CONTE, NEWBERG ON CLASS ACTIONS § 11.41 (4th ed. 2005) ("*Newberg*") (collecting cases); *cf. Rankin v. Rots*, No. 02-cv-71045, 2006 U.S. Dist. LEXIS 45706, at *9 (E.D. Mich. June 28, 2006) ("[T]he only question . . . is whether the settlement, taken as a whole, is so unfair on its face as to preclude judicial approval.") (internal quotation marks omitted).

In considering whether to grant preliminary approval, the Court is not required to make a final determination of the adequacy of the settlement or to delve extensively into the merits of the settlement. *See In re Sulzer Hip Prosthesis & Knee Prosthesis Liab. Litig.*, Case No. 1:01-CV-9000, 2001 U.S. Dist. LEXIS 26714, at *17 (E.D. Ohio Oct. 19, 2001) ("*Sulzer Hip*"). These inquiries are reserved for the final approval stage of the class settlement approval process. Nor will any class member's substantive rights be prejudiced by preliminary approval because the proposed preliminary approval is solely to provide authority for notifying the class of the terms of the settlement agreement to set the stage for review of its final approval. *Id.*; *Newburg* § 11.25. Consequently, courts generally engage only in a limited inquiry to determine whether a proposed settlement falls within the range of possible approval and thus should be preliminarily approved. *Sulzer Hip*, 2001 U.S. Dist. LEXIS 26714, at *17-18 (preliminary approval may be based on "informal presentations" because of "substantial judicial processes that remain") (*quoting* MANUAL FOR COMPLEX LITIGATION (FOURTH) § 21.662, at 460 (2016)). *See also In re Packaged Ice Antitrust Litig.,* No. 08-MD-01952, 2010 WL 3070161, at *4 (E.D. Mich. Aug. 2, 2010), *quoting Gautreaux v. Pierce,* 690 F.2d 616, 621 n.3 (7th Cir. 1982) (inquiry limited to settlement's potential for final approval and propriety of class notice and fairness hearing).

In evaluating whether a settlement is fair, reasonable and adequate, courts in the Sixth Circuit consider a number of factors:

> (1) the likelihood of success on the merits weighed against the amount and form of relief in the settlement; (2) the complexity expense and likely duration of the litigation; (3) the opinions of class counsel and class representatives; (4) the amount of discovery engaged in by the parties; (5) the reaction of absent class members; (6) the risk of fraud or collusion; and (7) the public interest. The Court may choose to consider only those factors that are relevant to the settlement at hand and may weigh particular factors according to the demands of the case.

*Packaged Ice*, 2011 U.S. Dist. LEXIS 17255, at *46-47 (quotation marks and citations omitted).

A court is not required at the preliminary approval stage to determine whether it ultimately will finally approve the settlement. Nevertheless, as set forth in detail below, preliminary consideration of the factors a court considers when evaluating the fairness of a settlement for purposes of deciding whether to grant final approval supports this Court's granting preliminary approval of the Settlement Agreement.

**A.    The Settlement Agreement Achieves an Excellent Result for the Proposed Settlement Class, Particularly Given the Expense, Duration, and Uncertainty of Continued Litigation.**

Antitrust class actions are "arguably the most complex action(s) to prosecute. The legal and factual issues involved are always numerous and uncertain in outcome." *In re Packaged Ice Antitrust Litig.*, Case No. 08-MDL-01952, 2011 U.S. Dist. LEXIS 150427, at *76 (E.D. Mich. Dec. 13, 2011) (*quoting Linerboard*, 292 F. Supp. at 639); *see also In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 533 (E.D. Mich. 2003) ("*Cardizem*") ("Moreover, the complexity of this case cannot be overstated. Antitrust class actions are inherently complex"). Extensive motion practice would be likely, and the discovery process would be all the more complicated due to the

unique issues that attend discovery against foreign parties.[2] Additionally, Defendant OAE would presumably assert various defenses, and a jury trial might well turn on close questions of proof, many of which would be the subject of complicated expert testimony, particularly with regard to damages, making the outcome of such trial uncertain for both parties. *See*, *e.g.*, *Cardizem*, 218 F.R.D. at 523 (in approving settlement, noting that "the prospect of a trial necessarily involves the risk that Plaintiffs would obtain little or no recovery and that "no matter how confident trial counsel may be, they cannot predict with 100% accuracy a jury's favorable verdict, particularly in complex antitrust litigation"); *Packaged Ice*, 2011 U.S. Dist. LEXIS 17255, at *53-54 (noting the "undeniable inherent risks" in antitrust class action litigation including "whether the class will be certified and upheld on appeal, whether the conspiracies as alleged in the Complaint can be established, whether Plaintiffs will be able to demonstrate class wide antitrust impact and ultimately whether Plaintiffs will be able to prove damages"). *Id.* Given this uncertainty, "[a] very large bird in the hand in this litigation is surely worth more than whatever birds are lurking in the bushes." *In re Chambers Dev. Sec. Litig.*, 912 F. Supp. 822, 838 (W.D. Pa. 1995).

Moreover, given the stakes involved, an appeal is nearly certain to follow regardless of the outcome at trial. This creates additional risk, as judgments following trial may be overturned on appeal. *See, e.g.*, *In re Farmers Ins. Exchange, Claims Representatives' Overtime Pay Litig.*, 481 F.3d 1119 (9th Cir. 2007) ($52.5 million class action judgment following trial reversed on appeal); *Robbins v. Koger Props., Inc.*, 116 F.3d 1441 (11th Cir. 1997) (jury verdict of $81 million for plaintiffs reversed and judgment entered for defendant). And even if class members were willing

---

[2] Because Interim Co-Lead Class Counsel may have to litigate against the other Defendants through trial and appeal, their duties to the Classes preclude a more detailed discussion of their potential litigation risks. Instead, Class Counsel here recite the arguments that have been and are expected to be raised by its Defendants.

to assume all of the litigation risks, the passage of time would introduce still more risks in terms of appeals and possible changes in the law that would, in light of the time value of money, make future recoveries less valuable than recovery today. *See In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 536 (3d Cir. 2004) ("[I]t was inevitable that post-trial motions and appeals would not only further prolong the litigation but also reduce the value of any recovery to the class."); *In re Rent-Way Sec. Litig.*, 305 F. Supp. 2d 491, 501 (W.D. Pa. 2003) ("[A] future recovery, even one in excess of the proposed Settlement, may ultimately prove less valuable to the Classes than receiving the benefits of the proposed Settlement at this time"). Hence, "the certain and immediate benefits to the Class represented by the Settlement outweigh the possibility of obtaining a better result at trial, particularly when factoring in the additional expense and long delay inherent in prosecuting this complex litigation through trial and appeal." *Cardizem*, 218 F.R.D. at 525.

Against this background, an early settlement providing the substantial benefits afforded here represents an excellent result for the members of the proposed Settlement Class. Defendant OAE's US$3,040,000.00 payment provides for significant compensation to the proposed Settlement Class that will be available years earlier than would be the case if litigation against Defendant OAE continued through trial and appeal. Settlements of this type, before discovery has been completed, create value beyond their direct pecuniary benefit to the class. *See Packaged Ice*, 2011 U.S. Dist. LEXIS 17255, at *50-51 (noting "significant value" of icebreaker settlement); *In re Linerboard Antitrust Litig.*, 292 F. Supp. 2d 631, 643 (E.D. Pa. 2003); *In re Corrugated Container Antitrust Litig.,* 1981 WL 2093 *16 (S.D. Tex. Jan. 27, 1981) ("*Corrugated Container*").

Of particular importance is the fact that the Settlement Agreement requires Defendant OAE to provide substantial discovery cooperation to Interim Co-Lead Class Counsel by providing transactional data, attorney proffers and interviews, documents, and trial testimony, among other

cooperation. *See* Settlement Agreement § K (¶¶ 45 – 54). This cooperation agreement is extremely valuable to the classes. The cooperation to be provided by the terms of the Settlement Agreement will afford the EPPs access to transactional data, documents, and witnesses without protracted and expensive discovery—a significant class-wide benefit. *See, e.g.*, *In re Packaged Ice Antitrust Litig.*, Case No. 08-MD-01952, 2010 U.S. Dist. LEXIS 77645, at *44 (E.D. Mich. Aug. 2, 2010) ("Particularly where, as here, there is the potential for a significant benefit to the class in the form of cooperation on the part of the settling Defendant, this Court is reluctant to refuse to consider the very preliminary approval that will trigger that cooperation"); *see also Linerboard*, 292 F. Supp. 2d at 643; *Corrugated Container*, 1981 WL 2093, at *16; *cf. In re Pressure Sensitive Labelstock Antitrust Litig.*, 584 F. Supp. 2d 697, 702 (M.D. Pa. 2008) ("[T]he benefit of obtaining the cooperation of the Settling Defendants tends to offset the fact that they would be able to withstand a larger judgment.").

The value of an early settlement can be so great that early-settling defendants often obtain a substantial discount relative to the remaining defendants. The *Linerboard* court, for example, approved a settlement with the first-settling defendant for less than one percent of sales and approximately one-third of the percentage of sales obtained from the other defendants. *Compare Linerboard*, 292 F. Supp. 2d at 643 (approving icebreaker settlement for approximately 0.4% of sales), *with In re Linerboard Antitrust Litig.*, 321 F. Supp. 2d 619, 633 (E.D. Pa. 2004) (approving settlements with final two defendants for 1.6% and 2% of sales). In accepting this discounted recovery from the first-settling defendants, the *Linerboard* court emphasized the "substantial" intangible benefit to the class of the icebreaker agreement. 292 F. Supp. 2d at 643.

As set forth above, the Settlement Agreement offers significant benefits to consumers, including injunctive relief. *See* Settlement Agreement at Section F. The Settlement Agreement also

13

specifically provides that it does not alter the non-settling defendants' joint and several liability for the full damages caused by the alleged conspiracies, including all sales made by these Defendants. *See* Settlement Agreement ¶ 62. In this regard, the Settlement Agreement is similar to one of the settlements approved in *Corrugated Container*, where the court noted the "valuable provision" under which plaintiffs reserved their right to recover full damages from the remaining Defendants, less the actual amount of the initial settlement. 1981 WL 2093, at *17; *see also In re Uranium Antitrust Litig.*, 617 F.2d 1248 (7th Cir. 1980); *In re Ampicillin Antitrust Litig.*, 82 F.R.D. 652, 654 (D.D.C. 1979) (approving settlement where class will "relinquish no part of its potential recovery" due to joint and several liability). Here too, the EPPs will be able to pursue their full damages, with no diminution other than deduction of the actual OAE settlement amount.

**B.     The Settlement Agreement Is The Result Of Thorough Arm's-Length Negotiations Conducted By Highly Experienced Counsel.**

The judgment of proposed Settlement Class Counsel that the settlement is in the best interest of the proposed Settlement Class "is entitled to significant weight, and supports the fairness of the class settlement." *Sheick v. Auto Component Carrier LCC*, Case No. 2:09-cv-14429, 2010 U.S. Dist. LEXIS 110411, at *51 (E.D. Mich. Oct. 18, 2010) (quoting *IUE-CWA*, 238 F.R.D. at 597); *see also Cardizem*, 218 F.R.D. at 525. Courts give great weight to the recommendation of experienced counsel for the parties in evaluating the adequacy of a settlement.

"Preliminary approval of a proposed settlement is based upon the court's familiarity with the issues and evidence, as well as the arms-length nature of the negotiations prior to the proposed settlement, ensuring that the proposed settlement is not illegal or collusive." *Thacker v. Chesapeake Appalachia, L.L.C.*, 259 F.R.D. 262 (E.D. Ky. 2009) (quoting *In re Dun & Bradstreet Credit Servs. Customer Litig.*, 130 F.R.D. 366, 370 (S.D. Ohio 1990)). The Settlement Agreement here is the result of lengthy and hard-fought negotiations between counsel experienced in complex

14

antitrust and consumer class action litigation. The Settlement Agreement, in its initial form, was negotiated for months by Interim Co-Lead Class Counsel in a process that involved multiple discussions with counsel for Defendant OAE, including in-person meetings. Interim Co-Lead Class Counsel undertook a diligent and thorough investigation of the legal and factual issues posed by this litigation and consulted extensively with experienced economists before negotiating this deal.

Counsel for the EPPs was well-informed about the facts and the strength of the claims asserted when the terms of the Settlement Agreement were initially negotiated. *See Packaged Ice*, 2011 U.S. Dist. LEXIS 17255, at *56 ("[T]he absence of formal discovery is not an obstacle [to settlement approval] so long as the parties and the Court have adequate information in order to evaluate the relative position of the parties.") (quotation marks and citation omitted); *Griffin v. Flagstar Bancorp, Inc.*, 2013 U.S. Dist. LEXIS 173702 (same).

Moreover, these negotiations were adversarial and conducted in the utmost good faith. "Courts presume the absence of fraud or collusion in class action settlements unless there is evidence to the contrary." *Leonhardt v. ArvinMeritor, Inc.*, 581 F. Supp. 2d 818, 838 (E.D. Mich. 2008); *Bowers v. Windstream Ky. East, LLC*, Civil Action No. 3:09-CV-440-H, 2013 U.S. Dist. LEXIS 157242, at *5 (W.D. Ky. Nov. 1, 2013). There is nothing in the course of the negotiations or the substance of the settlement that "disclose[s] grounds to doubt its fairness." *Manual* § 21.662 at 464.

## II.  The Proposed Settlement Class Should Be Provisionally Certified Pursuant to Rule 23.

The Manual notes the propriety of certifying a class solely for purposes of settlement, *see Manual* § 21.32, and courts in this Circuit routinely provisionally approve a proposed settlement class before deciding plaintiffs' motion for class certification. *See, e.g., In re Delphi Corp. Sec.*

*Derivatives & ERISA Litig.*, 248 F.R.D. 483, 486 n. 2 (E.D. Mich. 2008) (granting final approval to both ERISA and Securities settlement class, noting the court's earlier, preliminary approval of the settlement class granted prior to a hearing on defendants' motions to dismiss); *Cardizem*, 218 F.R.D. at 516-17, 530 (granting final approval of proposed settlement, noting its earlier preliminary approval of both the proposed settlement class and the proposed settlement agreement granted prior to class certification and prior to hearing on motions to dismiss). A court may grant provisional certification where, as here, the proposed settlement class satisfies the four prerequisites of Rule 23(a) (numerosity, commonality, typicality and adequacy), as well as one of the three subsections of Rule 23(b). *See In re Packaged Ice Antitrust Litig.*, No. 08-MD-01952, 2010 U.S. Dist. LEXIS 140235, at *27-28 (E.D. Mich. Sept. 2, 2010).

While the Supreme Court recently reiterated that, particularly in the context of a litigated class certification motion, a trial court must conduct a "rigorous analysis" to confirm that the requirements of Rule 23 have been met, *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011), even in that context "the requisite 'rigorous analysis' of the record and consideration of the merits must be focused on and limited to the question whether the Rule's requirements have been established." *Cason-Merenda v. VHS of Mich., Inc.*, 2013 U.S. Dist. LEXIS 131006, at *20-21 (E.D. Mich. Sept. 13, 2013) (*citing In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 722 F.3d 838, 851-52 (6th Cir. 2013)). Permissible inquiry into the merits of plaintiffs' claims at the class certification stage is limited:

> Rule 23 grants courts no license to engage in free-ranging merits inquiries at the class certification stage. Merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied.

*Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 133 S. Ct. 1184, 1194-95 (2013) ("*Amgen*") (citing *Dukes*, 131 S. Ct. at 2552 n.6). "In other words, district courts may not turn the class certification

proceedings into a dress rehearsal for the trial on the merits." *In re Whirlpool Corp.*, 722 F.3d 838, 851-52 (internal quotation marks and citation omitted). Here, as demonstrated below, even under a "rigorous analysis," the requirements of Rule 23 are easily met.

### A.   The Proposed Settlement Class Meets the Requirements of Rule 23(a).

Horizontal price fixing class actions are routinely certified by courts in this District and elsewhere. EPPs' allegations of "a per se violation of the antitrust laws are exactly the kind of allegations which may be proven on a class-wide basis through common proof." *In re Southeastern Milk Antitrust Litig.*, Master File No. 2:09-MD-1000, 2010 U.S. Dist. LEXIS 94223, at *35 (E.D. Tenn. Sept. 7, 2010). "Courts have held that the existence of a conspiracy is the predominant issue in price fixing cases, warranting certification of the class even where significant individual issues are present." *Id.* at *33 (internal quotation marks and citations omitted). "As a rule of thumb, a price fixing antitrust conspiracy model is generally regarded as well suited for class treatment." *In re Foundry Resins Antitrust Litig.*, 242 F.R.D. 393, 409 (S.D. Ohio 2007); *see also Hyland v. Homeservices of Am., Inc.*, Case No. 3:05-CV-612-R, 2008 U.S. Dist. LEXIS 90892, at *12 (W.D. Ky. Nov. 6, 2008).

### i.   The Proposed Settlement Class Is So Numerous That It Is Impracticable to Bring All Class Members Before the Court.

No magic number is required to satisfy the numerosity requirement of Rule 23(a)(1). *Miller v. Univ. of Cincinnati*, 241 F.R.D. 285, 288 (S.D. Ohio 2006). A class representative need only show that joining all members of the potential class is extremely difficult or inconvenient. *Golden v. City of Columbus*, 404 F.3d 950, 965 (6th Cir. 2005). The "sheer number of potential litigants in a class, especially if it is more than several hundred, can be the only factor needed to satisfy Rule 23(a)(1)." *In re Foundry Resins Antitrust Litig.*, 242 F.R.D. at 403 (*citing Bacon v. Honda of*

17

*America Mfg., Inc.*, 370 F.3d 565, 570 (6th Cir. 2004)); *see also In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1079 (6th Cir. 1996).

Here, the proposed Settlement Class consists of all persons and entities who, from January 1, 2003, through the execution date of the Settlement Agreement between Defendant OAE and the EPPs, purchased or leased a new Honda Vehicle in the United States not for resale which included one or more Power Window Switches manufactured by Defendant OAE or a co-defendant as a component part or indirectly purchased one or more of these products as a replacement part. Since then, it is beyond dispute that millions of persons and entities throughout the United States have purchased or leased Honda Vehicles containing Power Window Switches for personal use. As a result of the large number of putative class members and their geographic distribution throughout the United States, joinder is highly impractical – if not impossible.

### ii. End-Payor Plaintiff Class Representatives and the Proposed Settlement Class Share Common Legal and Factual Questions.

Commonality only requires that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). While Rule 23(a)(2) speaks of questions of law or fact in the plural, "there need be only one common question to certify a class." *In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 722 F.3d at 853; *see also Cason-Merenda*, 2013 U.S. Dist. LEXIS 131006, at *22 (one common question of law or fact is sufficient); *Griffin v. Flagstar Bancorp Inc.*, 2013 U.S. Dist. LEXIS 173702 (same); *Date v. Sony Elecs., Inc.*, Case No. 07-15474, 2013 U.S. Dist. LEXIS 108095, at *10 (E.D. Mich. July 31, 2013) (same).

This prerequisite is readily satisfied here because "antitrust price-fixing conspiracy cases, by their nature, deal with common legal and factual questions about the existence, scope and effect of the alleged conspiracy." *In re Aluminum Phosphide Antitrust Litig.*, 160 F.R.D. 609, 613 (D. Kan. 1995). Thus, in price-fixing cases, courts "have consistently held that the very nature of a

conspiracy in an antitrust action compels a finding that common questions of law and fact exist." *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, No. M 02-1486 PJH, 2006 U.S. Dist. LEXIS 39841 (N.D. Cal. June 5, 2006); *see also* Newberg § 3:10 at 278 ("[In an] antitrust action on behalf of purchasers who have bought defendants' products at prices that have been maintained above competitive levels by unlawful conduct, the courts have held that the existence of an alleged conspiracy or monopoly is a common issue that will satisfy the Rule 23(a)(2) prerequisite").

Here, EPPs have identified the following issues common to the proposed Settlement Class:

- Whether Defendant engaged in combinations and conspiracies among themselves to fix, raise, maintain, or stabilize the prices of Power Window Switches sold in the United States;

- Whether Defendant engaged in combinations and conspiracies among themselves to rig bids quoted to customers of Power Window Switches sold in the United States;

- Whether Defendant engaged in combinations and conspiracies to allocate customers and the markets for Automotive Power Window Switches sold in the United States;

- The duration of the illegal conspiracy or conspiracies;

- Whether Defendant's conduct resulted in unlawful overcharges on the prices of Power Window Switches; and

- Whether unlawful overcharges on the price of Power Window Switches were passed through to the indirect purchasers of Power Window Switches.

Any one of these substantive issues would, standing alone, establish the requisite commonality under Rule 23(a)(2).

### iii. End-Payor Plaintiff Class Representatives' Claims Are Typical of the Claims of the Members of the Proposed Settlement Class.

Third, Rule 23(a) requires typicality of the class representatives' claims. *See* Fed. R. Civ. P. 23(a)(3). "The [typicality] requirement is not onerous," *Int'l Union, UAW v. Ford Motor Co.*,

2006 U.S. Dist. LEXIS 70471, at *54, and courts liberally construe it. *See In re Foundry Resins Antitrust Litig.*, 242 F.R.D. at 403. "In the antitrust context, typicality is established when the named plaintiffs and all class members allege[] the same antitrust violation by defendants." *Cason-Merenda*, 2013 U.S. Dist. LEXIS 131006, at *25 (quoting *In re Foundry Resins Antitrust Litig.*, 242 F.R.D. at 405); *see also Stout v. J.D. Byrider*, 228 F.3d 709, 717 (6th Cir. 2000); *In re Am. Med. Sys.*, 75 F.3d at 1082; *Packaged Ice*, 2011 U.S. Dist. LEXIS 17255, at *40-41. "If there is a strong similarity of legal theories, the requirement [of typicality] is met, even if there are factual distinctions among named and absent class members." *Griffin v. Flagstar Bancorp, Inc.*, 2013 U.S. Dist. LEXIS 173702, at *17-18 (quotation marks and citation omitted); *Packaged Ice*, 2011 U.S. Dist. LEXIS 17255, at *40 (same).

Because the End-Payor Plaintiff Class representatives and the members of the proposed Settlement Class believe they are all victims of the conspiracies to fix prices, rig bids, and allocate the market and customers for Power Window Switches, Rule 23(a)(3) is satisfied. *See Cason-Merenda*, 2013 U.S. Dist. LEXIS 131006, at *26 (finding typicality met where "the claims of the named Plaintiffs and those of the remaining members of the proposed class all arise from the same conspiracy and are based on the same theory of liability under the Sherman Act.") (internal quotation marks and citation omitted)); *Packaged Ice*, 2011 U.S. Dist. LEXIS 17255, at *40-41 ("Because all Class Members' claims arise from . . . a conspiracy to allocate markets in violation of the Sherman Act, their claims are based on the same legal theory and the typicality requirement . . . is met").

iv.    **Proposed Settlement Class Counsel and End-Payor Plaintiff Class Representatives Will Fairly and Adequately Protect the Interests of the Proposed Settlement Class.**

The final requirement of Rule 23(a) is that the representative parties "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The Sixth Circuit has articulated two criteria for determining adequacy of representation: "'1) [t]he representative must have common interests with unnamed members of the class, and 2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel.'" *In re Foundry Resins Antitrust Litig.*, 242 F.R.D. at 407 (*quoting Senter v. Gen. Motors Corp.*, 532 F.2d 511, 525 (6th Cir. 1976)). EPPs submit that there are no conflicts between them and the proposed Settlement Class because EPPs and members of the proposed Settlement Class: (i) purchased or leased in the United States motor Vehicles containing the relevant part; and/or (ii) indirectly purchased the relevant part and have the same interest in establishing liability. *See In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 208 (5th Cir. 1981) (certifying settlement class and holding that "so long as all class members are united in asserting a common right, such as achieving the maximum possible recovery for the class, the class interests are not antagonistic for representation purposes" (internal quotation marks and citation omitted)). EPPs and the members of the proposed Settlement Class also share a common interest in obtaining Defendant OAE's substantial cooperation in prosecuting the claims against the non-settling Defendants.

Rule 23(g) requires the Court to examine the capabilities and resources of class counsel to determine whether they will provide adequate representation to the class. The proposed Settlement Class is represented by counsel with extensive experience in antitrust and class action litigation. They have vigorously prosecuted the class claims, and they will continue to do so through all phases of the litigation, including trial. *See Marcus v. Dep't of Revenue*, 206 F.R.D. 509, 512 (D.

Kan. 2002) ("In absence of evidence to the contrary, courts will presume the proposed class counsel is adequately competent to conduct the proposed litigation"). The Court appointed Cotchett, Pitre & McCarthy, LLP, Robins Kaplan LLP, and Susman Godfrey L.L.P. as Interim Co-Lead Class Counsel in this action and the other automotive parts antitrust cases within Master File No. 2:12-md-2311. *See* Case Management Order No. 3 filed as ECF No. 271. For the same reasons that the Court appointed them to this position, it should appoint them Settlement Class Counsel here.

### B.     The Proposed Settlement Class Meets the Requirements of Rule 23(b)(3).

To qualify for certification under Rule 23(b)(3), a class must meet two requirements beyond the Rule 23(a) prerequisites: common questions must predominate over any questions affecting only individual members; and class resolution must be superior to other available methods for the fair and efficient adjudication of the controversy. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 615 (1997) ("*Amchem*"); *see also In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 535 (6th Cir. 2008). With respect to both requirements, the Court need not inquire whether the "case, if tried, would present intractable management problems, for the proposal is that there be no trial." *Amchem*, 521 U.S. at 620 (internal citations omitted).

### i.     Common Questions of Law and Fact Predominate.

"Rule 23(b)(3) does not mandate that a plaintiff seeking class certification prove that each element of the claim is susceptible to classwide proof." *In re Whirlpool Corp.*, 722 F.3d at 859. Instead, "'[a] claim will meet the predominance requirement when there exists generalized evidence which proves or disproves an element on a simultaneous, class-wide basis, since such proof obviates the need to examine each class member's individualized position.'" *In re Foundry Resins Antitrust Litig.*, 242 F.R.D. at 408 (quoting *In re Cardizem CD Antitrust Litig.*, 200 F.R.D.

at 307). Common questions need only predominate; they need not be dispositive of the litigation. *Id.* (citing *In re Potash Antitrust Litig.*, 159 F.R.D. 682, 693 (D. Minn. 1995)); *cf. In re Scrap Metal Antitrust Litig.*, 527 F.3d at 535-36 (holding issues regarding the amount of damages do not destroy predominance). "[T]he mere fact that questions peculiar to each individual member of the class action remain after the common questions of the defendant's liability have been resolved does not dictate the conclusion that a class action is impermissible." *Cason-Merenda v. VHS of Mich., Inc.*, 2013 U.S. Dist. LEXIS 131006, at *19-20 (quoting *Powers v. Hamilton Cnty. Public Defender Comm.*, 501 F.3d 595, 619 (6th Cir. 2007)). As pertinent to the EPPs' request here to provisionally certify the proposed Settlement Class under Rule 23(b)(3), the Supreme Court very recently instructed that "Rule 23(b)(3) requires a showing that *questions* common to the class predominate, not that those questions will be answered, on the merits, in favor of the class." *Amgen*, 133 S.Ct. at 1191.

Because the EPPs allege conduct from which all proposed Settlement Class Members' alleged injuries arise, issues common to the proposed Settlement Class Members—for example, the existence and scope of the alleged price-fixing conspiracy or conspiracies among Defendants, and the market impact of Defendants' conspiracy or conspiracies—predominate over any individual questions, and therefore class treatment of the claims is appropriate for purposes of this settlement. *See Amchem*, 521 U.S. at 625 ("Predominance is a test readily met in certain cases alleging . . . violations of the antitrust laws."); *see also In re Vitamins Antitrust Litig.*, 209 F.R.D. 251, 254 (D.D.C. 2002) ("[A]s a rule, the allegation of a price-fixing conspiracy is sufficient to establish predominance of common questions[.]") (*quoting* NEWBERG ON CLASS ACTIONS § 18.28 at 18-98 (3d ed. 1992)). This Circuit has also held "[p]redominance is a test readily met in certain cases alleging . . . violations of the antitrust laws, because proof of the conspiracy is a common

23

question that is thought to predominate over the other issues of the case." *In re Scrap Metal Antitrust Litig.*, 527 F.3d at 535 (*quoting Amchem*, 521 U.S. at 625).[3] Furthermore, here the evidence that will prove a violation as to one Settlement Class Member is common to the others and will be sufficient to prove it as to all—the anticompetitive conduct is not dependent on the separate conduct of the individual Settlement Class Members. *See Packaged Ice*, 2011 U.S. Dist. LEXIS 17255, at *43.

This is true even if there are individual state law issues, as long as the common issues still outweigh the individual ones; *e.g.*, as long as a common theory can be alleged as to liability and impact that can be pursued by the class. *See, e.g., In re Whirlpool Corp.*, 722 F.3d at 861 ("[I]t remains the 'black letter rule' that a class may obtain certification under Rule 23(b)(3) when liability questions common to the class predominate over damages questions unique to class members." (internal quotation marks and citation omitted)); *Scrap Metal*, 527 F.3d at 535 (where common issues determine liability, fact that damages calculation may involve individualized issues does not defeat predominance). Issues common to the proposed Settlement Class predominate in this case. The presence of these common issues of liability and impact predominates over any individual issues and strongly support provisional certification of the proposed Settlement Class.

> ii.     **A Class Action Is The Superior Method To Adjudicate These Claims.**

---

[3] Other courts have recognized that the existence and scope of an alleged antitrust conspiracy are matters susceptible to class-wide proof, and thus tend to support a finding that common issues predominate over individual ones as to at least the first element of an antitrust conspiracy claim. *See, e.g., Cordes & Co. Financial Services, Inc. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 105 (2d Cir. 2007); *Blades v. Monsanto Co.*, 400 F.3d 562, 572 (8th Cir. 2005); *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 136 (2d Cir. 2001); *In re Blood Reagents Antitrust Litig.*, 283 F.R.D. 222, 234 (E.D. Pa. 2012); *Reed v. Advocate Health Care*, 268 F.R.D. 573, 581 (N.D. Ill. 2009); *In re Urethane Antitrust Litig.*, 251 F.R.D. 629, 634 (D. Kan. 2008); *Foundry Resins*, 242 F.R.D. at 408.

Rule 23(b)(3) also requires that a class action be superior to other available methods of fairly adjudicating the controversy. The superiority of class certification over other available methods is measured by consideration of certain factors, including: the class members' interests in controlling the prosecution of individual actions; the extent and nature of any litigation concerning the controversy already begun by or against class members; the desirability of concentrating the litigation of various claims in the particular forum; and the likely difficulties in managing a class action. *Dillworth v. Case Farms Processing, Inc.*, No. 5:08-cv-1694, 2010 U.S. Dist. LEXIS 20446 (N.D. Ohio Mar. 8, 2010).

Courts consistently hold that class actions are a superior method of resolving antitrust claims like those alleged here. *See In re Universal Serv. Fund Tel. Billing Practices Litig.*, 219 F.R.D. 661, 678 (D. Kan. 2004) (noting that individual litigation of antitrust claims would be "grossly inefficient, costly, and time consuming"). Here, the interests of Settlement Class members in individually controlling the prosecution of separate claims are outweighed by the efficiency of the class mechanism. *Cardizem*, 200 F.R.D. at 325-26 (finding that class action is superior because it ensures fair and efficient adjudication). Untold numbers of Settlement Class members purchased or leased Vehicles containing the relevant part as a component part or indirectly purchased the relevant part as a replacement part for a Vehicle during the settlement class period; resolving these claims in the context of a class action would conserve both judicial and private resources and would hasten the class members' recovery. *See, e.g.*, *In re Foundry Resins*, 242 F.R.D. at 411-12 ("Repeatedly litigating the same issues in individual suits would produce duplicate efforts,

unnecessarily increase litigation costs, impose an unwarranted burden on this Court and other courts, and create a risk of inconsistent results").[4]

### C.   The Proposed Settlement Class Meets the Requirements of Rule 23(b)(2).

If the requirements of Rule 23(a) are met, the Court may also certify a class under Rule 23(b)(2) where "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole . . ." Claims for non-monetary relief, like those asserted under state laws, including those states that do not recognize claims for money damages by indirect purchasers in antitrust actions, are properly certified under Rule 23(b)(2).

### III.   Notice to the Class Members.

Rule 23(c)(2)(B) requires the Court to "direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." With regard to class action claims that are settled, Rule 23(e) instructs courts to "direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1). "[D]ue process does not require actual notice, but rather a good faith effort to provide actual notice." *Thacker*, 259 F.R.D. at 271-72. To comport with the requirements of due process, notice must be "reasonably calculated to reach interested parties." *Fidel v. Farley*, 534 F.3d 508, 514 (6th Cir. 2008) (*citing Karkoukli's, Inc. v. Dohany*, 409 F.3d 279, 283 (6th Cir. 2005)).

---

[4] Another criterion of Rule 23(b)(3) is manageability. The Supreme Court has made clear that manageability need not be considered where, as here, a class is being certified for settlement purposes. *Amchem*, 521 U.S. at 620 ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, see Fed. R. Civ. P. 23(b)(3)(D), for the proposal is that there be no trial").

Because it would be most cost-effective and efficient to disseminate notice of this settlement together with notice of other settlements, the parties have agreed to defer dissemination of notice. As set forth in the Settlement Agreement, "End-Payor Plaintiffs shall, at a time to be decided in their sole discretion, submit to the Court a motion for authorization to disseminate notice of the settlement and final judgment contemplated by this Agreement to all members of the Settlement Class identified by End-Payor Plaintiffs ("Notice Motion")." *See* Settlement Agreement ¶ 18. To mitigate the costs of notice and ensure timely notice of this settlement, the End-Payor Plaintiffs shall disseminate notice of this settlement as part of the next notice of any other settlements that have been or are reached in the MDL Litigation that End-Payor Plaintiffs disseminate following preliminary approval of this Agreement. *Id.* The Notice Motion shall include a proposed form of, method for, and date of dissemination of notice in the Action. *Id.* Accordingly, with the Court's permission, proposed Settlement Class Counsel will submit a proposed motion for authorization to disseminate notice at a later date.

## CONCLUSION

For the foregoing reasons, EPPs respectfully request that the motion for preliminary approval be granted and that the Court enter the accompanying Proposed Order:

1. Preliminarily approving the Settlement Agreement;

2. Provisionally certifying the proposed Settlement Class;

3. Staying the proceedings against Defendant OAE (as defined in the Settlement Agreement) in accordance with the terms of the Settlement Agreement;

4. Appointing Interim Co-Lead Class Counsel for the EPPs as Settlement Class Counsel for this settlement.

Date: August 12, 2016                    Respectfully submitted,

                                         */s/ Steven N. Williams*
                                         Steven N. Williams
                                         Demetrius X. Lambrinos
                                         Elizabeth Tran
                                         Joyce Chang
                                         **COTCHETT, PITRE & McCARTHY, LLP**
                                         San Francisco Airport Office Center
                                         840 Malcolm Road
                                         Burlingame, CA 94010
                                         Telephone: (650) 697-6000
                                         swilliams@cpmlegal.com
                                         dlambrinos@cpmlegal.com
                                         etran@cpmlegal.com
                                         jchang@cpmlegal.com

                                         */s/ Hollis Salzman*
                                         Hollis Salzman
                                         Bernard Persky
                                         William V. Reiss
                                         **ROBINS KAPLAN LLP**
                                         601 Lexington Avenue, Suite 3400
                                         New York, NY 10022
                                         Telephone: (212) 980-7400
                                         Hsalzman@RobinsKaplan.com
                                         Bpersky@RobinsKaplan.com
                                         Wreiss@RobinsKaplan.com

                                         */s/ Marc M. Seltzer*
                                         Marc M. Seltzer
                                         Steven G. Sklaver
                                         **SUSMAN GODFREY L.L.P.**
                                         1901 Avenue of the Stars, Suite 950
                                         Los Angeles, CA 90067-6029
                                         Telephone: (310) 789-3100
                                         mseltzer@susmangodfrey.com
                                         ssklaver@susmangodfrey.com

                                         Terrell W. Oxford
                                         Omar Ochoa
                                         **SUSMAN GODFREY L.L.P.**
                                         901 Main Street, Suite 5100
                                         Dallas, TX 75202
                                         Telephone: (214) 754-1900
                                         toxford@susmangodfrey.com

oochoa@susmangodfrey.com

*Interim Co-Lead Class Counsel for the*
*Proposed End-Payor Plaintiff Class*

E. Powell Miller
Devon P. Allard
Mariell R. McLatcher
**THE MILLER LAW FIRM, P.C**.
The Miller Law Firm, P.C.
950 W. University Drive, Suite 300
Rochester, MI 48307
Telephone: (248) 841-2200
epm@millerlawpc.com
dpa@millerlawpc.com
mrm@ millerlawpc.com

*Interim Liaison Class Counsel for the*
*Proposed End-Payor Plaintiff Class*

**CERTIFICATE OF SERVICE**

I hereby certify that on August 12 2016, I caused the foregoing END-PAYOR PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF END-PAYOR PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF PROPOSED SETTLEMENT WITH DEFENDANT OAE AND PROVISIONAL CERTIFICATION OF SETTLEMENT CLASS to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

*/s/ Steven N. Williams*
Steven N. Williams